UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONICA CASTRO, *et al.*, <br> Plaintiffs <br><br> v. <br><br> ABBOTT LABORATORIES, INC., <br> Defendant | No. 25 CV 377 <br><br> Judge Jeremy C. Daniel |

## ORDER

The defendant's motion to dismiss [25] is granted in part and denied in part. Specifically, it is granted as to Counts XI, XIV, and XV and denied as to Counts I to X, XII, and XIII. Any amended complaint is due February 13, 2026. The defendant shall answer the operative complaint by March 6, 2026.

## STATEMENT

**Background**

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving this motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Defendant Abbott Laboratories, Inc. ("Abbott") is a healthcare company that manufactures and distributes medical devices, pharmaceuticals, and other health-related products. (R. 25 at 10.)[1] One of these products is a milk-based formula powder drink for infants and toddlers, marketed under the brand name "Similac." (R. 18 ¶¶ 10–11.) Two of the drinks under this brand name are at issue in this case—"Go & Grow Toddler Drink by Similac" and "Pure Bliss Toddler Drink by Similac." (*Id.*) These drinks purport to meet the nutritional needs of children between the ages of twelve and thirty-six months. (*Id.* ¶ 11.)

The labels on each can containing toddler formula appear similar to labels on the cans containing infant drink formula. Once a child is no longer an infant, the labels appear to indicate that they are the next step drink following infant formula. (*Id.* ¶¶ 13–14.) The label on the "Go & Grow" can purports to contain "28 Important Nutrients for

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Growth and Development," "Immune Support," "Brain Development," "Digestive Health," "5 HMO Prebiotics," "DHA," "Lutein," "Vitamin E" and "Total Care," and it also claims to not contain "artificial growth hormones," "GMOs," or "Palm Olein Oil." (*Id.* ¶ 17.) Similarly, the label on the "Pure Bliss" can represents that it contains "Probiotics," "DHA," and "Milk from Grass-Fed Cows," and does not contain "added corn syrup solids," "artificial growth hormones," "antibiotics," or "GMOs." (*Id.* ¶ 18.)

Plaintiffs Nancy Helmhold and Damary Santana are citizens of Illinois and Massachusetts, respectively, who purchased the formula drinks for their toddler-age children. (*Id.* ¶¶ 78–79, 81.) They seek to represent a putative class of consumers who purchased any of Abbott's toddler drinks in the following states: Illinois, Massachusetts, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. (*Id.* ¶ 86.) The plaintiffs allege that Abbott has engaged in false labeling and false advertising that caused them to overpay for the toddler formula, in violation of consumer protection and false advertising laws in each of the aforementioned states—these are Counts I through X. (*Id.*; *see also id.* ¶¶ 95–220.) They also bring claims on behalf of all classes for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, negligent misrepresentation, and intentional misrepresentation—these are Counts XI through XV. (*Id.* ¶¶ 221–53.)

Specifically, they allege that the toddler drink cans' similarities to the infant drink cans falsely represents that the toddler drink is the logical next nutritional step in formula, even when doctors and experts do not necessarily recommend toddler formula drinks. (*Id.* ¶¶ 12–14.) They also allege that the claims on the labels "are false and misleading because they focus on the products' purported health benefits while omitting information regarding the health harms of their added sugar content." (*Id.* ¶ 26.) Abbott now moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).

## Legal Standard

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Additionally, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pursuant to Rule 9(b), a

2

plaintiff must "describe the 'who, what, when, where, and how' of the fraud[.]" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).[2]

<u>Analysis</u>

**Rule 9(b)**

As a threshold matter, the Court finds that the plaintiffs' claims have been sufficiently pled with particularity under Rule 9(b). The plaintiffs have alleged who committed the fraud (Abbott), what the fraud was (that the toddler formula can is the next nutritionally recommended product after infant formula and is a healthy product), when (during the class period), where (in the nine states listed), and the how (by using the term "Stage 3" and having visual similarities between the infant and toddler formula cans; by making representations as to health benefits of the formula on the can's labels). *See id.*

**Similarity of Infant and Toddler Cans**

Abbott first argues that the plaintiffs fail to adequately plead their false labeling claims because they rely on an unreasonable reading of the formula can labels. (R. 25 at 14–17.) The toddler formula label includes the words "Stage 3," and that label is visually similar to the infant formula label containing the words "Stage 1" and "Stage 2." (R. 18 ¶ 13.) The plaintiffs allege that this wording and the similarity are an indication that the toddler formula is "the next nutritionally recommended product for [caregivers] to purchase after infant formula." (*Id.*) Abbott argues that a reasonable consumer would not ascribe this meaning to the label because the similarity of the labels and the words "Stage 3" are not nutritional recommendations. (R. 25 at 15–16.)

The parties appear to agree that all states' consumer protection statutes share a common pleading requirement: to state a claim, the plaintiffs must allege conduct that could plausibly deceive a reasonable consumer. (R. 25 at 14; R. 26 at 11.) *See Troutt v. Mondelēz Glob. LLC*, 637 F. Supp. 3d 606, 613–14 (S.D. Ill. 2022); *see also Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015). Courts "take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020).

---

[2] Abbott also brings a motion to dismiss for lack of standing to pursue injunctive relief but do not bring a jurisdictional challenge writ large. Fed. R. Civ. P. 12(b)(1). This argument is addressed at the end of the order.

3

Drawing all reasonable inferences in favor of the plaintiffs, the Court cannot say at this juncture that the plaintiffs' interpretation of the label is unreasonable as a matter of law. Observing the larger context outside of the plain text, per *Bell*, a reasonable consumer could be deceived. *Id.* For example, the term "stage" can plausibly indicate a progression, where the starting point is Stage 1 and the end point is Stage 3. (*See* R. 26 at 14.) And the similarity of the cans, as well as their placement on the same shelves as the infant formula, could lead a reasonable consumer to conclude that the toddler formula is nutritionally recommended for children aged twelve to thirty-six months in the same way that infant formula is nutritionally recommended for children up to twelve months. (*See id.* at 10.)

Abbott cites *Martelli v. Rite Aid Corp.* for the contention that its labels are sufficiently distinct. In *Martelli*, the toddler drink at issue had an age range of nine to eighteen months listed, and the court concluded that the drink's visually similar label to the same brand's infant drink was effectively distinguished. No. 21-CV-10079 (PMH), 2023 WL 2058620, at *5 (S.D.N.Y. Feb. 16, 2023). *Martelli* is inapposite here for the reason that the plaintiffs state: the label also included a disclaimer stating that the product was "intended to supplement the solid-food portion of the older baby's diet" and was "not intended to replace breast milk or starter formulas." (*See* R. 26 at 17); *Martelli*, 2023 WL 2058620, at *2. Here, there is no such disclaimer, and it is not for the Court to say at this stage whether its absence would cause a reasonable consumer to be deceived into believing that the toddler formula is next in the chain of formula drinks for young children. Thus, the motion to dismiss as to the claims of similarity is denied.

**Labeling Statements and Sugar Content**

Abbott next argues that the plaintiffs fail to sufficiently plead their claim that the labeling statements on the cans deceive reasonable consumers about the formula's sugar content. (R. 25 at 17–22.) The plaintiffs allege that a series of representations about the health benefits and contents on each of the two cans causes consumers to believe the toddler formula cans are healthy; this is misleading according to the plaintiffs because the formula contains four grams of added sugars, which are decidedly unhealthy. (R. 18 ¶¶ 17–20.)

Abbott specifically argues that the cans included express sugar disclosures, so the statements could not have misled consumers. (R. 25 at 17–20.) Again, the Court follows a reasonable consumer standard in evaluating this claim. In *Bell v. Publix Super Markets, Inc.*, the Seventh Circuit evaluated a "100% Grated Parmesan Cheese" label on a cheese product in Publix Markets. *Bell*, 982 F.3d at 475. The district court found that, while the 100% label was ambiguous, the presence of an ingredient list on the back label provided sufficient clarity to render the label not misleading. *Id.* That court also found that a common sense reading of the label would tell a reasonable consumer that "despite the 100% claims, these cheese

4

products *must* contain added ingredients because they are sold unrefrigerated in the main grocery aisles, alongside dried pastas and canned sauces." *Id.* The Seventh Circuit reversed, finding that a reasonable consumer is not expected, under law, to "test prominent front-label claims by examining the fine print on the back label." *Id.* at 477.

For each of the state laws that is alleged to be violated, a reasonable consumer standard applies to false labeling and consumer protection cases. *Troutt*, 637 F. Supp. 3d at 613–14; *Mullins*, 795 F.3d at 673. It is not for this Court to decide at the motion to dismiss stage whether a reasonable consumer would unknowingly interpret the front labels as representing the product as healthy even with the presence of added sugars on the back labels. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (citing *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)).

There are a number of questions of fact in this inquiry that this Court cannot resolve at the motion to dismiss stage: whether a reasonable consumer would, in fact, understand the toddler formula to be healthy, whether a reasonable consumer would look to the back of the can to inspect the fine print ingredient list, whether the added sugars actually do render the formula overall unhealthy, and whether a reasonable consumer would understand the added sugars to do so. *See Bell*, 982 F.3d at 478 ("This practical and fact-intensive approach to consumer behavior under deceptive-advertising laws is consistent with the law's approach under other consumer-protection laws."). At this stage, it is sufficient that the plaintiffs have alleged that the product contains added sugars and has the representations on the front of the can about health benefits, as well as allegations about added sugars being unhealthy.

Abbott also seeks to dismiss on the grounds that the labels are not explicitly misleading because the plaintiffs have not alleged that they are false in and of themselves. (R. 25 at 20–22.) This misconstrues the plaintiffs' allegations. The plaintiffs do not allege that the statements are literally false; instead, they challenge the statements as conferring an overall understanding of the formula cans as healthy when they have added sugars, which is alleged to be unhealthy. (R. 18 ¶¶ 17–20.) Therefore, the Court denies Abbott's motion to dismiss as to the added sugar theory claims. Counts I through X survive against Abbott.

**Unjust Enrichment**

Abbott argues that the plaintiffs fail to state an unjust enrichment claim, (R. 18 ¶¶ 234–37), because the claim rests on the statutory violations alleged, which it believes to be insufficient. (R. 25 at 22–23.) Because the Court has found that the statutory claims are adequately pled, it denies the motion to dismiss as to the plaintiffs' claim for unjust enrichment (Count XIII).

**Express and Implied Warranty Claims**

The plaintiffs bring claims for breach of express warranty and breach of the implied warranty of merchantability in Counts XI and XII, respectively. (R. 18 ¶¶ 221–33.) Abbott first argues that the plaintiffs fail to plead an express warranty because they do not allege the "terms of the putative express warranty which they contend that Abbott breached." (R. 25 at 23.) Each of the states at issue follows the Uniform Commercial Code express warranty standard (U.C.C. § 2-313). *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982) (Illinois); Mass. Gen. Laws ch. 106 § 2-313 (Massachusetts); *Taillard v. Mercedes-Benz USA, LLC*, 2025 WL 2549940, No. 24-62173-CIV-DAMIAN/Valle, at *10 (S.D. Fla. Sep. 9, 2025) (Florida); Minn. Stat. § 336.2-313 (Minnesota); *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 720 (D.N.J. 2011) (New Jersey); Mich. Comp. Laws § 440.2313 (Michigan); Mo. Rev. Stat. § 400.2-313 (Missouri); *Sayeedi v. Walser*, 835 N.Y.S.2d 840, 847 (Civ. Ct. Richmond Cnty. 2007) (New York); Wash. Rev. Code § 62A.2-313 (Washington).

U.C.C. § 2-313 provides in relevant part that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." In order to state an express warranty claim, a "plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. 2001). The plaintiffs have not pled that any of the challenged statements are themselves false such that Abbott breached an express warranty. In order to plead such a breach, the plaintiffs must allege that the toddler formula cans did not contain "28 Important Nutrients for Growth and Development," "5 HMO Prebiotics," "Probiotics," "Milk from Grass-Fed Cows," or any of the other ingredients that Abbott lists on the front of the cans. The Court therefore grants the motion to dismiss as to Count XI.

Abbott next argues that the plaintiffs do not adequately plead breach of the implied warranty of merchantability because they "have failed to allege that the products were unfit for consumption," "did not include the vitamins and nutrients stated on the products' labels," or "are not suitable for their intended purpose (providing vitamins and nutrients to children aged one year to three years)." (R. 25 at 24–25.) Like for express warranty claims, each of the states at issue has adopted the U.C.C.'s provision regarding the implied warranty of merchantability (U.C.C. § 2-314), which states in relevant part that "[g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used; and . . . conform to the promise or affirmations of fact made on the container or label if any." U.C.C. § 2-314; *see also* 810 ILCS 5/2-314 (Illinois); Mass. Gen. Laws ch. 106 § 2-314 (Massachusetts); Fla. Stat. § 672.314 (Florida); Mich. Comp. Laws § 440.2314 (Michigan); Mo. Rev. Stat. § 400.2-314 (Missouri); MINN. STAT. § 336.2-314

(Minnesota); N.J. Rev. Stat. § 12A:2-314 (New Jersey); N.Y. U.C.C. § 2-314 (New York); Wash. Rev. Code § 62A.2-314 (Washington).

The Court finds that the plaintiffs have pled a breach of the implied warranty of merchantability in alleging that "a balanced, nutritious diet excludes sugar-sweetened beverages for children above 12 months, and otherwise limits added sugar to less than 5% of calories, whereas regular consumption of the Toddler Drinks is detrimental, rather than beneficial to health." (R. 18 ¶ 231.) This is a plain allegation that the toddler formula is not "fit for the ordinary purposes for which such goods are used," namely, to provide a healthy supplement to a toddler's nutrition. (*Id.* ¶ 19.) The Court thus denies Abbott's motion to dismiss as to Count XII.

**Intentional and Negligent Misrepresentation**

Finally, Abbott argues that the plaintiffs fail to plead intentional and negligent misrepresentation in Counts XIV and XV because the "[p]laintiffs fail to allege a false statement of material fact." (R. 25 at 26.) Alleging a false statement of material fact is one element of both an intentional misrepresentation claim and a negligent misrepresentation claim. *See, e.g., Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (intentional misrepresentation); *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 562 (Ill. App. 2d 2003) (negligent misrepresentation). "Three factors encompass a false statement of material fact: (i) a misrepresentation, (ii) involving a fact (iii) that is material." *Ash v. PSP Distrib., LLC*, 226 N.E.2d 748, 755 (Ill. App. 1st 2023). In this case, the plaintiffs have failed to identify such a statement. Their allegations are instead that the statements on the can, which the plaintiffs do not allege to be false on their own terms, provide an incorrect impression to consumers regarding the healthiness of the formula. (R. 18 ¶ 19.) This falls short of an allegation that the statement is a false one of material fact. The Court thus dismisses Counts XIV and XV against Abbott.

**Injunctive Relief**

Last, the Court considers Abbott's motion to dismiss the plaintiffs' request for injunctive relief under 12(b)(1). A Rule 12(b)(1) motion "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *See Stubenfield v. Chi. Hous. Auth.*, 6 F. Supp. 3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996)). Standing is a threshold jurisdictional requirement that "derives from the Constitution's limit on federal courts' authority to resolve 'cases' and 'controversies.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing U.S. Const. art. III, § 2, cl. 1). Abbott argues that the plaintiffs are not entitled to injunctive relief. (R. 25 at 26–27.)

7

A remedy is not a claim, however, and at the motion to dismiss stage the question is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Therefore, it is not the proper juncture to consider whether the plaintiffs are entitled to certain relief. *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

Date: January 23, 2026

JEREMY C. DANIEL
United States District Judge